IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| BRYAN ARVIDSON,<br><br>Plaintiff,<br><br>vs.<br><br>CAPTAIN BRAGG, LEO DUTTON, HEIDI RN, TAYLOR RN, and DR. CROWELL,<br><br>Defendants. | CV 22–65–H–BMM<br><br><br><br>ORDER |

Plaintiff Bryan Arvidson, a state prisoner proceeding without counsel, alleges that he was denied adequate medical care when he was a pretrial detainee at the Lewis and Clark County Detention Center in Helena, Montana, from October 2021 to September 2022. (*See* Doc. 18.) Defendants seek summary judgment on the ground that no constitutional violation occurred and, alternatively, that Arvidson failed to either disclose a medical expert to support his claim or exhaust his administrative remedies. The undisputed facts show that Arvidson failed to administratively exhaust his remedies and received constitutionally-adequate medical care. The Court will grant summary judgment in favor of Defendants.

**LEGAL STANDARD**

Summary judgment proves appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018) (explaining that while pro se parties are exempted from "*strict* compliance with the summary judgment rules," they are "not exempt[ed] . . . from *all* compliance," such as the requirement to identify or submit competent evidence in support of their claims).[1]

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Doc. 76), and viewed in the light most favorable to Arvidson. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

---

[1] The defendants' motion was accompanied by the requisite *Rand* Notice, (*see* Doc. 81), and Arvidson responded to the motion (*see* Doc. 82).

I.   **Factual Background**

On October 1, 2021, deputies from the Lewis and Clark County Sheriff's Office went to Arvidson's house following reports that he was firing a gun indiscriminately around his property. (Doc. 76 at ¶ 1.) Following a standoff with law enforcement, Arvidson was arrested and charged with attempted deliberate homicide, criminal endangerment, resisting arrest, and failing to appear. (*Id.* ¶¶ 1, 2.) During the pretrial period—from October 2, 2021, to September 19, 2022—he was held at the Lewis and Clark County Detention Center. (*Id.* ¶ 2.) Upon his admission into the Detention Center, Arvidson immediately was placed in a suicide watch cell due to his mental health issues, primarily agoraphobia and anxiety. (*See* Doc. 77-7 at 1.)

On October 3, 2021, the day after his admission to the Detention Center, Arvidson wrote his first kite, informing the staff that he had an ongoing medical problem with his bowel movements that involved severe pain while defecating and blood in his stool. (Doc. 76 at ¶ 7; *see* Doc. 77-8 at 64.) Arvidson was examined by medical staff from St. Peter's Hospital that day, (*see* Doc. 76 at ¶ 5), and on October 4, 2021, Defendant Dr. Courtnay Crowell, the Detention Center's physician, ordered lab work and a chem panel. (*Id.* ¶ 8.) Dr. Crowell examined Arvidson on October 7, 2021, reporting that he had not been eating or drinking since his incarceration until his wife brought him a Life Straw to filter his water.

3

(*Id.* ¶¶ 9–10.) Dr. Crowell noted that Arvidson showed a markedly abnormal eating and drinking pattern immediately upon incarceration. (*Id.* ¶¶ 11, 87; *see* Doc. 77-8 at 61–63 (October 5 kites indicating that he does not drink tap water or eat processed foods due to mental health issues).) Although Arvidson mentioned blood in his stools in a kite submitted on October 5, 2021 (*see* Doc. 77-8 at 57, 61), Dr. Crowell attests that Arvidson did not mention any blood in his stools during his October 7, 2021 visit. (Doc. 76 at ¶ 12.) Dr. Crowell started Arvidson on Paxil and scheduled a follow-up visit for ten days later. (*Id.* ¶ 13.)

On October 18, 2021, Arvidson was unable to see Dr. Crowell and he refused to see her the following day, October 19, 2021. (*Id.* ¶ 16.) Dr. Crowell reviewed Arvidson's case on October 28, 2021, in which she confirmed he was eating and she noted significant weight gain. (*Id.* ¶¶ 17–18.) Dr. Crowell recommended Arvidson continue to be given Ensure supplements for those times he would not eat the jail food. (*Id.* ¶ 19.) Notably, Arvidson submitted no kites at all, let alone requests for medical care, from October 6, 2021 to November 5, 2021. (*See* Doc. 77-8 at 55–56.) On November 5, 2021, Arvidson submitted a request for medical care, stating that he had rectal bleeding and it was getting worse. (*Id.* at 55.)

On November 8, 2021, Arvidson saw Dr. Crowell at the Detention Center clinic. (Doc. 76 at ¶ 21.) Arvidson reported at this visit blood in his stools and that

he had been having hard stools. (*Id.*) Although Arvidson refused a rectal exam, he indicated there was a family history of colon cancer and that he was willing to try a stool softener. (*Id.* ¶ 22.) On November 18, 2021, Arvidson saw Dr. Crowell again in the clinic for blood in his stool, (*id.* ¶ 23), following a November 14, 2021, kite that stated he continued to have pain when defecating and there was still blood in his stool. (Doc. 77-8 at 54.)

Dr. Crowell's notes from this visit indicate that the amount of blood had decreased from the prior visit and that the stool softeners had been effective. (Doc. 76 at ¶ 24.) Arvidson did not have a fever or abdominal pain and once again declined a rectal exam. (*Id.*) Arvidson declined further evaluation related to his stools at this time. (*Id.* ¶ 25.) Dr. Crowell continued to monitor Arvidson's health through his lab work, noting that, on November 22, 2021, Arvidson's lab work indicated that his liver functions were improving but that his hemoglobin was slightly decreased, consistent with a refusal to eat. (*Id.* ¶¶ 27–29.)

On December 6, 2021, Arvidson saw Dr. Crowell again, complaining of rectal bleeding and left lower quadrant pain. (*Id.* ¶ 31; *see* Doc. 77-8 at 53 (December 1, 2021 kite).) According to Dr. Crowell, this was the first time that Arvidson complained of abdominal pain. (*Id.* ¶ 32.) At this visit, Arvidson agreed to undergo a rectal exam, which revealed one hemorrhoid. (*Id.* ¶ 33.) Dr. Crowell noted that she would refer him for a colonoscopy. (*Id.*)

On December 14, 2021, Arvidson met with Dr. Crowell again, reporting rectal bleeding, abdominal pain, and some constipation. (*Id.* ¶ 34; *see* Doc. 77-8 at 50 (December 8, 2021 kite indicating stomach pain and bloody stools).) Arvidson agreed to another rectal exam and indicated he was taking stool softeners as directed. (Doc. 76 at ¶ 34.) Dr. Crowell noted again Arvidson's referral to a gastroenterologist to rule out any serious illness. (*Id.*) The evening after his December 14, 2021, visit, Arvidson sent another medical kite asking when he was going to get his colon checked for cancer because he had had blood in his stools for 70 days and the pain in his gut had "moved to both sides." (Doc. 77-8 at 47.)

Defendant Heidi Exley faxed Arvidson's consultation details to St. Peter's Hospital on December 16, 2021, and again on December 20, 2021. (Doc. 76 at ¶ 35; *see* Doc. 77-8 at 46–47 (responding to Arvidson's kite regarding having his colon checked).) Arvidson sent an additional kite regarding continued rectal blood and pain on December 15, 2021. (*See* Doc. 77-8 at 46.) Arvidson also saw Dr. Crowell again on December 20, 2021, complaining of abdominal pain and blood in his stool. (Doc. 76 at ¶ 36; *see* Doc. 77-8 at 44 (December 19 kite).) On December 21, 2021, Detention Center nursing staff noted that Arvidson had a consult at St. Peter's scheduled for January 19, 2022. (Doc. 76 at ¶ 37.) On December 22, 2021, Arvidson kited about continued abdominal pain. (*See* Doc. 77-8 at 41.)

On December 28, 2021, nursing staff reported that Arvidson was refusing to take his medications as prescribed. (Doc. 76 at ¶ 39.) This noncompliance extended until January 3, 2022. Arvidson was taken to the emergency room at St. Peter's Hospital following his involvement in a jailhouse fight on January 1, 2022. (*Id.* ¶¶ 39, 42–43.) During that visit, he had a chest x-ray, a brain and facial bone CT, and was treated for lacerations on his cheek and eyebrow. (*Id.*) In light of his facial injuries, Dr. Crowell also referred Arvidson to St. Peter's Hospital for an ear, nose and throat consult. (*Id.* ¶ 45.)

From January 4, 2022 to January 18, 2022, Arvidson saw medical staff five more times—to follow up on an unrelated injury, to have stitches removed, to diagnose a fractured rib, to have an infected hangnail removed, and to address a complaint of hair loss. (*Id.* ¶¶ 44, 46.) On January 20, 2022, Arvidson submitted a kite indicating that he was still bleeding when he defecated and that he had only defecated three times in the month of January. (Doc. 77-8 at 33.) On January 23, 2022, Arvidson once again refused to take his medication. (Doc. 76 at ¶ 47.) Arvidson submitted another kite on January 30, 2022, stating that there was "heavy bleeding last night" and that it was only the sixth time he had defecated that month. (Doc. 77-8 at 32.)

Arvidson saw Dr. Crowell on February 3, 2022, once again complaining of rectal bleeding and constipation. (Doc. 76 at ¶ 48.) Arvidson reported having only

six bowel movements in January 2022. (*Id.*) Arvidson had not had his consult on January 19, 2022, however, due to scheduling issues. (*Id.*) On February 9, 2022, Arvidson was taken to see a physician's assistant at St. Peter's Hospital for a consultation for his abdominal pain and rectal bleeding. (*Id.* ¶ 49.) During that visit, Arvidson confirmed that he had suffered from rectal bleeding for years and had a history of chronic constipation. (*Id.*) The physician's assistant ordered a colonoscopy and recommended Arvidson increase his Miralax intake. (*Id.* ¶ 50.)

On February 10 and 11, 2022, Arvidson submitted kites stating that he still had gut pain and few bowel movements despite having taken a significant number of laxatives. (Doc. 77-8 at 29–30.) On February 13, 2022, Arvidson was transported to the Emergency Department at St. Peter's Hospital because he had not had a bowel movement for multiple days and Defendant Exley had noted that his abdomen was firm and hypoactive. (Doc. 76 at ¶ 51, 52.) A CT scan was performed, which showed a large amount of stool in the colon and no evidence of a small-bowel obstruction. (*Id.* ¶ 52.) The ER doctor diagnosed constipation and noted thickening portions of the rectum and colon and recommended a follow-up lower endoscopy. (*Id.* ¶ 53.) On February 16, 2022, Arvidson kited that he still was experiencing pain related to his bowels, and, on February 18, 2022, he kited to ask what the plan was going forward regarding his GI issues. (*See* Doc. 77-8 at 28.) On February 22, 2022, Defendant Exley faxed Arvidson's paperwork to St.

Peter's for the endoscopy. (Doc. 76 at ¶ 55.)

Arvidson had a colonoscopy on February 24, 2022, and the evaluator observed no polyps or issues with the esophagus but that there were "some minor hemorrhoids" and "no diverticulosis" was noted. (*Id.* ¶ 56.) During the procedure, biopsies of his stomach were also taken. (*Id.* ¶ 58.) Arvidson saw Dr. Crowell again on March 3, 2022, for a psychiatric evaluation and to address his continuing GI issues. (*Id.* ¶ 60.) Arvidson admitted to not taking his medication as consistently as prescribed. (*Id.*) Arvidson also reported that he was not having stools. The correctional officers informed Dr. Crowell that Arvidson told them that he had been having regular stools since his colonoscopy after the Detention Center shut off Arvidson's water to watch for stools. (*Id.* ¶ 61.) Arvidson kited on March 6, 2022, complaining of continued gut pain and on March 9, 2022, he indicated that he still had bloody stools. (*See* Doc. 77-8 at 24–25.) Dr. Crowell discussed Arvidson's colonoscopy results with him on March 11, 2022. (Doc. 76 at ¶ 63.) Arvidson complained of pain and continued bleeding from his rectum. (*Id.* ¶ 64.) Dr. Crowell again diagnosed Arvidson with constipation and discussed the importance of using Metamucil daily and Miralax at least every other day. (*Id.* ¶¶ 67–68.)

Dr. Crowell reported that the gastric biopsy showed the presence of bacteria on March 15, 2022, so she prescribed Arvidson antibiotics. (*Id.* ¶ 69.) Although

Arvidson submitted a kite indicating that he needed to speak to provider because his paperwork "talks a lot about stomac [sic] cancer," (Doc. 77-8 at 20), medical staff clarified that "[t]he paper work does not say you have cancer anywhere" and that the biopsy was performed "to rule out colon cancer." (*Id.* at 19). On March 20, 2022, Arvidson once again kited chronic gut pain. (*See id.* at 18.) Defendant Exley discussed with Arvidson's provider on March 23, 2022, a Urea breath test and barium enema that that GI clinic wanted for him. (Doc. 76 at ¶ 70.) Defendant Exley learned these procedures were "not emergent" and could wait until Arvidson was transferred to the Montana State Prison. (*Id.*)

Arvidson insisted on March 25, 2022, that his GI doctor had "prescribed different meds" and was ultimately locked down for yelling vulgarities and making obscene gestures at the nursing staff. (*Id.* ¶ 71.) Arvidson's GI provider at St. Peter's Hospital approved hydrocortisone suppositories and Preparation H on March 28, 2022, in case of rectal bleeding. (*Id.* ¶ 72.) When this approach was discussed with Arvidson, he insisted he was missing an antibiotic he was supposed to take, but he could not identify which one. (*Id.*; *see* Doc. 77-8 at 15–16.) Dr. Crowell left her employment at the Detention Center on April 1, 2022. (Doc. 76 at ¶ 112.)

Arvidson met with nursing staff and complained of blood in his stool on April 19, 2022. (*Id.* ¶ 73; *see* Doc. 77-8 at 13 (April 19 kite).) Arvidson did not

request medical care through the inmate grievance system after this date for any GI issues. (*See* Doc. 82-1 at 1–13.) Staff were able to evaluate the blood in the toilet and determined it was not significant. (Doc. 76 at ¶ 73.) Arvidson was told to inform medical staff if the bleeding continued. (*Id.*) Medical staff scheduled an appointment for Arvidson on May 3, 2022, to once again be seen at St. Peter's Hospital GI clinic for a follow-up. (*Id.* ¶ 74.) That appointment was scheduled for May 31, 2022. It had to be rescheduled for transportation issues. (*Id.*) Defendant Exley noted on June 23, 2022, that she had verified once again that Arvidson's GI provider did not want his Urea breath test and barium enema started until he was at the Montana State Prison. (*Id.* ¶ 75.)

Arvidson saw Advanced Nurse Practitioner Jennifer McAnally on July 13, 2022, regarding a complaint of depression and poor sleep. (*Id.* ¶ 76.) Arvidson stated during this appointment that his constipation was now "under control." (*Id.* ¶ 77.) Arvidson's medical records show no further complaints regarding his GI conditions, though he attempted suicide by hanging on August 24, 2022. (*Id.* ¶ 78; *see* Doc. 77-10 at 1.) The final note on August 31, 2022, from NP McAnally was that Arvidson was refusing to take his Metamucil as prescribed. (Doc. 76 at ¶ 79.) Arvidson was sentenced to forty years at the Montana State Prison on September 19, 2022. (*Id.* ¶ 80.) Arvidson was transferred that same day. (*Id.* ¶ 122.)

II. **Procedural Background**

Arvidson filed the operative complaint in this Court on November 28, 2022, alleging that Lewis and Clark County Detention Center, his medical providers, and correctional officers denied him adequate medical care from October 3, 2021, to September 19, 2022. (*See* Doc. 18.) More specifically, Arvidson alleges that they refused him medical treatment for five months—from his arrest in October 2021 until he was taken to the emergency room in February 2022—and "kept [him] in extreem [sic] pain the entire time." (*Id.* at 5.) The undisputed record belies Arvidson's claim.

## ANALYSIS

Defendants assert that they are entitled to summary judgment on the grounds that Arvidson received adequate medical care and that even if he did not, Arvidson failed to disclose a medical expert or administratively exhaust. The undisputed record shows that Arvidson received constitutionally-adequate medical care. Nevertheless, because Arvidson must have properly exhausted his claims to proceed here, *Jones v. Bock*, 549 U.S. 199, 216 (2007), Defendants' exhaustion argument is addressed first below.

### I.  Exhaustion

The Prison Litigation Reform Act ("PLRA") prohibits any prisoner from suing over prison conditions until he has first exhausted available administrative remedies by completing a correctional facility's administrative review process

according to its rules. *See* 42 U.S.C. § 1997e(a). A defendant must prove the inmate's failure to exhaust by showing "there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). "[O]nce the defendant has carried that burden, the prisoner has the burden of production." *Id.* "That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.*

Arvidson acknowledged his receipt of a copy of the Lewis and Clark County Detention Center's grievance policy on October 5, 2021, by signing the inmate handbook. (Doc. 76 at ¶ 3; *see* Doc. 77-5.) The grievance policy requires that a grievance be submitted into the "KIOSK system" within 48 hours and then the process contains four steps: (1) information investigation, (2) appeal to Detention Sergeant, (3) appeal to Detention Captain, and (4) appeal to the Sheriff, whose decision is final. (Doc. 76 at ¶ 4; *see* Doc. 77-6 at 9.) The record shows that Arvidson regularly submitted requests for medical care through the KIOSK system. (*See* Doc. 77-8.) No records show that Arvidson appealed any action, inaction, or decision as required in steps (2) through (4), (Doc. 76 at ¶ 7.) Arvidson does not respond to this argument directly, but merely states that he repeatedly emailed the jail staff in an effort to obtain medical care. (*See* Doc. 82.)

13

This claim proves insufficient to exhaust under the Detention Center's administrative appeals process. Arvidson's medical care claim is not properly before the Court.

## II.     Medical Care

The undisputed factual record further shows that Arvidson received constitutionally adequate medical care.  Because he was a pretrial detainee, Arvidson's claims challenging the adequacy of his medical care are assessed under the Due Process Clause of the Fourteenth Amendment.  *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).  The elements of such a claim are the following:

> (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125.  "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (cleaned up).  Ultimately, "the plaintiff must prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quotation marks and footnote omitted).  "The mere lack of due care by a state official does not deprive an individual of life, liberty, or

14

property under the Fourteenth Amendment." *Id.* (quotation marks omitted).

Arvidson cannot show that the jail caused his medical condition, as his grievances show that his rectal bleeding and constipation were preexisting conditions that he himself had failed to get evaluated before his incarceration due to his agoraphobia. (*See* Doc. 77-8 at 64.) Arvidson has failed to show that his condition was inadequately treated by the facility. During his time at the jail, Arvidson was examined over 15 times and received a CT scan, a colonoscopy, and a biopsy screening. Arvidson was consistently treated with stool softeners and fiber supplements. The record here compels only one conclusion: Arvidson received adequate medical care. He therefore cannot prevail on his claim.

As outlined in detail above, medical staff at the Lewis and Clark Detention Center provided consistent care for Arvidson's medical issues, including regular visits with the jail doctor, consultations with specialists, and emergency treatment. Although Arvidson maintains that he consistently complained of a life-threatening health issue, (*see* Doc. 82), he was provided treatment for those concerns. As argued by Defendants, based on this undisputed factual record, no jury could conclude that "following his repeated clinical visits, lab work, hospital stays, prescription regimes, and over-the-counter treatments" that Defendants "failed to take reasonable available measures to abate" any substantial risk of serious harm to Arvidson's health. (Doc. 75 at 27.)

15

The staff at the Lewis and Clark Detention Center provided constitutionally-adequate medical care. The Court need not, and does not, consider whether the defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (explaining that if the defendant's conduct did not violate a constitutional right, further analysis is unnecessary). The Court also need not consider the defendants' arguments regarding Arvidson's failure to disclose a medical expert.

## CONCLUSION

Based on the foregoing, IT IS ORDERED that Defendants' motion for summary judgment (Doc. 74) is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close the case file. The Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

DATED 30th day of September, 2024.

_____
Brian Morris, Chief District Judge
United States District Court